Eloise D. Arnold v. Commissioner. Marion D. Eddy v. Commissioner. Grace D. Thatcher v. Commissioner. Jane D. Bowey v. Commissioner.
Arnold v. Commissioner
Docket Nos. 108842, 108843, 108844, 108845.
United States Tax Court
1943 Tax Ct. Memo LEXIS 285; 2 T.C.M. (CCH) 150; T.C.M. (RIA) 43248; May 25, 1943
*285 1. Respondent's determination of the amount of gain realized on the liquidation of Douglas-Rogers, Inc., approved for failure of proof. 2. An account entitled "Marion I. Davis et al. Loan Account" was established in 1930 by petitioner's father on the books of the corporation. The amonts placed by the father in such account to petitioners' credit were gifts to them when so placed. Interest regularly credited to that account, pursuant to an agreement with the corporation, was income to petitioners in the years when so credited and made available to them. 3. Certain trusts established by petitoners' father for their benefit provided that interest payments should be made to them out of income but if income were insuffucient the corpus mignt be invaded. Respondent sustained upon lack of proof of the source of the payments made during the taxable years. 4. For approximately $160,000 petitioners purchased a chose in action collaterally secured by stock in the Home Insurance Company. The chose in action was paid by the application of the stock to the obligation. The fair market value of the stock was about $120,000. Due to lack of proof of the financial condition of the debtor, no deduction *286 is allowable for the loss claimed. C. Harold Baldwin, Esq., 18 Tremont St., Boston, Mass., for the petitioners. J. T. Haslam, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the income taxes of the petitioners as follows: Docket
No.
Petitioner
Year
Amount
108842
Eloise D. Arnold
1935
$29,215.30
Eloise D. Arnold
1936
640.11
Eloise D. Arnold
1937
425.07
Eloise D. Arnold
1938
252.38
108843
Marion D. Eddy
1935
31,390.27
Marion D. Eddy
1937
878.04
Marion D. Eddy
1938
1,321.76
108844
Grace D. Thatcher
1935
31,330.23
Grace D. Thatcher
1936
234.41
108845
Jane D. Bowey
1935
31,376.73
Jane D. Bowey
1937
1,142.94
Jane D. Bowey
1938
876.58
The issues are stipulated by the petitioners and respondent to be substantially as follows: 1. Was any taxable gain derived or received by the petitioners from the liquidation of Douglas-Rogers, Ltd., in 1935? 2. If taxable gain was derived by the petitioners from such liquidation, did the Commissioner compute the amount of the gain correctly by using, as a basis, the cost to J. Robson Douglas of the Douglas-Rogers, Ltd., stock *287 and otherwise by the method he employed? 3. Are the petitioners subject to a tax in 1935 on interest credited quarterly on the "Marion I. Davis et al. Loan Account" from 1930 to 1935, which interest, together with the principal of the account, was paid to the petitioners in 1935? 4. Are the petitioners subject to a tax on the payments received from Trust No. 1 and Trust No. 3? 5. Are the petitioners each entitled to a deduction of $9,912.32, or any other amount, in 1935, by reason of the claimed loss resulting from the purchase of the H. V. Smith chose in action? Findings of Fact The facts were stipulated and as so stipulated are adopted as findings of fact. The portions thereof material to the issues are substantially as follows: J. Robson Douglas, hereinafter called Douglas, was born at Amherst, Nova Scotia, where he lived, was educated, conducted business, married and reared a family. He maintained his residence at Amherst, Nova Scotia, until 1919, when he disposed of his home and took up temporary residence in the United States, making occasional visits to Amherst. In the year 1925, Douglas was appointed Lieutenant Governor of the Province of Nova Scotia, which office he *288 held for eight months, residing at Halifax, Nova Scotia. At the termination of his appointment as Lieutenant Governor of the Province of Nova Scotia, Douglas went to Bermuda, where he acquired a domicile in 1927; he retained the Bermuda domicile until his death on December 17, 1934, in Montreal, Canada. On March 21, 1903, Douglas executed his last will and testament, whereby he devised and bequeathed to his wife all his goods and chattels, both real and personal, together with all his life insurance, subject to the payment of all his debts and funeral expenses. The will was duly probated in the Supreme Court of Bermuda. On December 2, 1935, a commission was issued to Charles F. Tremaine of Nova Scotia, as Commissioner under the Succession Duty Act (Chapter 18, Revised Statutes of Nova Scotia, 1923, as amended), the appointment by the Provincial Treasurer of Nova Scotia directing him to: (a) Ascertain and inquire into what property (if any) that passed on the death of the said Honorable James Robson Douglas is subject to Succession Duty under the provisions of the said Chapter; the fair market value of such property, the amount of duty payable upon such property, and the persons *289 liable therefor; (b) fix and settle the amount of the debts and other allowances and exemptions and assess the cash value of every annuity, term of lease, term of years, life estate, income or other estate, and of every interest in expectancy as provided by the said Chapter; (c) make inquiries as to any property transferred inter vivos or wrongfully omitted from any statement or inventory filed; and (d) generally make inquiry as to any matter or thing arising under the said Chapter in connection with the Estate of the said Honorable James Robson Douglas. Commissioner Tremaine held hearings at Amherst, Nova Scotia, and, on August 28, 1936, submitted his findings, which were entered in the Supreme Court of the Province of Nova Scotia. The findings were affirmed by the Supreme Court and judgment entered in accordance therewith. The judgment ordered that the Province of Nova Scotia recover as follows: Against
Amount
Marion G. Douglas (widow)
$ 13,576.00
Marion I. Davis (Marion D. Eddy)
80,925.21
Grace B. Douglas (Grace D.
Thatcher)
80,164.21
Eloise Arnold
79,739.53
Marjory J. Douglas (Jane D.
Bowey)
78,626.17
Total
$333,031.12
Douglas was survived by his widow, *290 Marion Geneva Douglas, and by four daughters, the petitioners, all born in Nova Scotia, namely, Marion I., Eloise, Marjory J. and Grace B., whose married names are Marion D. Eddy, Eloise D. Arnold, Jane D. Bowey and Grace D. Thatcher. During the years involved herein Marion D. Eddy was a resident alien and filed her Federal income tax returns on the cash basis with the Collector of Internal Revenue as follows: 1935
Third District of Massachusetts
1936
Sixth District of Massachusetts
1937
Hartford, Connecticut
1938
First District of California
During the years involved herein Eloise D. Arnold was a resident alien and filed her Federal income tax returns on the cash basis for each year with the Collector of Internal Revenue for the Third District of Massachusetts. During the years involved herein Jane D. Bowey was a resident alien and filed her Federal income tax returns on the cash basis with the Collector of Internal Revenue as follows: 1935
Third District of Massachusetts
1936
Sixth District of Massachusetts
1937
Sixth District of Massachusetts
1938
Sixth District of Massachusetts
During the years 1935 and 1936 and for the period from January 1 to March *291 17, 1937, Grace D. Thatcher was a resident alien; on March 17, 1937, she left the United States and took up residence in Bermuda, which residence she retained during the remainder of 1937 and during the year 1938. She filed her Federal income tax returns on the cash basis as follows: 1935
Third District of Massachusetts
1936
Third District of Massachusetts
1937
Baltimore, Maryland
Gain on Liquidation of Douglas-Rogers, Ltd. In March, 1923, a part of the members of a former corporation, including Douglas, formed a new corporation bearing the name of Douglas-Rogers, Ltd., to engage in the investment business, under the laws of the Province of Nova Scotia, with an authorized capital stock of $100,000, consisting of shares of $100 par value each. A total of 994 shares was issued, for which the sum of $95 a share was paid. Two hundred and twenty of such shares were bought and paid for by J. Robson Douglas, who instructed Douglas-Rogers, Ltd., to issue the 220 shares in four certificates for 55 shares each in the names of the said four daughters of Douglas. Several increases in the capital stock took place down to 1933, at which time the authorized capital stock of Douglas-Rogers, *292 Ltd., stood at $700,000. During this period many transactions in the daughters' shares took place; at one time during this period no certificate of the shares of the corporation stood in the name of two of the daughters and the number of shares held by the different daughters varied. All of the shares for which certificates were issued in the names of the daughters of Douglas prior to his death (each daughter obtaining 980 shares) were paid for in cash or some other consideration passing to the company from Douglas and were outstanding in their names on December 17, 1934. The aggregate cost of the 3,920 shares to Douglas was $369,600, of which amount $92,400 was equally applicable to each of the four certificates of 980 shares. The certificates for these shares were delivered to Douglas and as changes in the number of shares represented by the certificates and of the names of the holders thereof occurred from time to time, he, Douglas, endorsed the certificates issued in his daughters' names by writing their name on the transfer on the back of the certificates and the signature on the Power of Attorney to transfer, which appears upon the back of all of such stock certificates, are *293 in all instances in the handwriting of Douglas. All of these certificates were kept by Douglas in his own private box, which was kept in a safety deposit vault in the safe of Douglas-Rogers, Ltd., and to which access could be gained only through some officer of Douglas-Rogers, Ltd. He showed these certificates to the officers of Douglas-Rogers, Ltd., in charge of the safe, from time to time, and instructed them that, in the event of and upon his death, these stock certificates would be found in his private box in the vault of the company and should be delivered to his daughters. Douglas-Rogers, Ltd., was incorporated under the laws of Nova Scotia, and its head office where the shares were transferable was Amerst, Nova Scotia. The four certificates for 980 shares each in the names of the daughters of Douglas were in Amherst at the date of his death. Pursuant to resolution, Douglas-Rogers, Ltd., was completely liquidated on May 13, 1935, at Amherst, Nova Scotia, and upon such liquidation of that company, each of the petitioners received in 1935 cash assets of $131,162.07 by reason of the shares of Douglas-Rogers, Ltd., amounting to 980 each in number, which they held upon the death *294 of the late Douglas. In the notices of deficiency from which these appeals are taken, the Commissioner determined that each of the petitioners realized taxable gain upon the liquidation of Douglas-Rogers, Ltd., in the year 1935, in the amount of $38,762.07, computed as follows: Cash value of assets received on
liquidation of Douglas-Rogers, Ltd.
$131,162.07
Cost to J. Robson Douglas of 980
shares Douglas-Rogers, Ltd., cap-
ital stock
92,400.00
Taxable gain
$ 38,762.07
No portion of such amount of $38,762.07 was included by any of the petitioners in their income tax return for the year 1935. In 1934 each of the petitioners herein received a dividend of $1,974.12 from Douglas-Rogers, Ltd. In computing the taxable gain of $38,762.07 in 1935, of each petitioner, on liquidation of Douglas-Rogers, Ltd., the Commissioner included the said dividend of $1,974.12. Petitioners Eloise D. Arnold and Marion D. Eddy included the dividend of $1,974.12 in income reported for the year 1934. Petitioners Grace D. Thatcher and Jane D. Bowey did not file a Federal income tax return for the year 1934 and hence did not report thereon the receipt of the dividend as income of any year. The *295 respondent concedes that with respect to each of the petitioners Eloise D. Arnold and Marion D. Eddy the taxable gain of $38,762.07 should be reduced by $1,974.12, or to $36,787.95. Marion I. Davis, et al. Loan Account In August, 1930, Douglas-Rogers, Ltd., sold for the account of Douglas certain stocks, the proceeds of which realized the sum of $70,000. On instructions from Douglas the officers of Douglas-Rogers, Ltd., opened an account on its books crediting the amount of $70,000 to his four daughters, Marion I. Davis, Eloise Arnold, Grace B. Douglas and Marjory J. Douglas under the caption "Marion I. Davis et al. Loan Account", hereinafter called the Loan Account. Douglas stated to the officers of Douglas-Rogers, Ltd., that his intention was to set up a fund for the benefit of his four daughters, and requested Douglas-Rogers, Ltd., to credit this sum to them. Douglas-Rogers, Ltd., received this sum of $70,000 and held it to be dealt with for their benefit. Douglas-Rogers, Ltd., opened the account on its books as instructed by Douglas and thereafter from time to time Douglas deposited sums of money for credit of that account. The Loan Account was credited with interest *296 at the rate of six per cent per annum each quarter year in accordance with an agreement made between Douglas-Rogers, Ltd., and Douglas. Douglas-Rogers, Ltd., during the year concerned was financially able to pay such interest. Each year interest was computed on the amount of the loans plus the interest credited to the account. On September 2, 1931, the credit balance of the Loan Account was, including interest credits, $836,442.50, at which time Douglas requested Douglas-Rogers, Ltd., to issue a demand note payable to each one of his four daughters in equal amounts and aggregating the credit balance of $836,442.50. The four notes were issued by Douglas-Rogers, Ltd., as requested, each bearing interest at the rate of 6 per cent per annum. These notes were delivered by Douglas-Rogers, Ltd., to Douglas at his request and were kept by him in his private iron box with his initials on it, in the vault of Douglas-Rogers, Ltd. None of the four daughters had access to the vault. Instructions were issued by Douglas to the officials of Douglas-Rogers, Ltd., that the notes were to be delivered to his daughters in the event of his death. Later in the month of September 1931, Douglas handed these *297 notes to Marion I. Davis at her residence in Newton, Massachusetts, and she advised her sisters of the existence of the notes and handed the four notes back to her father to be deposited in his private box in the vault at Douglas-Rogers, Ltd. At the same time he gave her a key to his private iron box which was kept in the vault of Douglas-Rogers, Ltd. These notes were subsequently seen by one Mr. Lamy on several occasions, when Douglas was examining the contents of his box; the notes were produced from this box after his death and, in accordance with the instructions of Douglas to the officials of Douglas-Rogers, Ltd., the notes were delivered to his four daughters after his death. During the period September 2, 1931 to February 28, 1935, the credit balance of the Loan Account had increased from $836,442.50 to $1,016,777 by adjustments and interest credited each quarter-annually. During the years 1933, 1934 and 1935 the account was debited with withdrawals by the petitioners and amounts paid to a bank and a trust company. The interest was computed on the face of each of the four notes, $206,611.30, plus interest accumulated to the previous (monthly) interest date. Douglas-Rogers, *298 Ltd., was financially able to pay the interest as it fell due. The entries of interest were made quarterly on the books of Douglas-Rogers, Ltd., in the Loan Account and aggregated $195,807 from October, 1930 to February 1935, inclusive. The sum of $195,807 so credited was included in the credit balance of $1,016,777 above described. The form of the four notes payable to the order of each one of the four daughters of Douglas that were given to him by Douglas-Rogers, Ltd., and delivered to his daughters upon his death by the officers of Douglas-Rogers, Ltd., taking them out of the safe of the corporation and from his iron box, read as follows: Amherst, N. S. Sept. 2nd, 1931. $206,611.30 On demand we promise to pay to the order of Marion I. Davis two hundred and six thousand, six hundred and eleven 30/100 dollars at the Royal Bank of Canada, Amherst, N. S. Value received, with interest payable monthly at the rate of 6% per annum as well after as before maturity. (Signed) Douglas, Rogers, Limited, George T. Douglas, President, A. H. Lamy, Secretary. except that the three others are payable to the three other said daughters and are for the sum of $206,610. On February 28, 1935, *299 the Loan Account on the books of Douglas-Rogers, Ltd., was closed and the credit balance of $1,016,777 was transferred in four equal parts, namely, $254,194.25, to the credit of separate accounts on the books of Douglas-Rogers, Ltd., in the names of the petitioners. Douglas-Rogers, Ltd., was completely liquidated on May 15, 1935, and upon the liquidation each of the petitioners received assets of a then cash value equal to the credit balance of her account at February 28, 1935, appearing on the books of Douglas-Rogers, Ltd., namely, $254,194.25. The Federal income tax returns filed by the petitioners herein for the year 1935, reported as income, interest received from Douglas-Rogers, Ltd., in the amounts as follows: Marion D. Eddy
$2,700.25
Grace D. Thatcher
2,680.25
Eloise D. Arnold
2,680.25
Jane D. Bowey
2,524.73
In the notices of deficiency the Commissioner determined that in 1935 each of the petitioners received one-fourth of the amount of interest, $195,807, which was included in the credit balance of $1,016,777, transferred from the Loan Account on February 28, 1935, in four equal parts to the credit of separate accounts in the names of the four petitioners. *300 The Commissioner further determined that during the period from February 28, 1935 to May 15, 1935, Douglas-Rogers, Ltd., accrued interest on the balances of the four accounts and credited the interest to such accounts as follows: Marion D. Eddy
$ 894.94
Grace D. Thatcher
1,255.94
Eloise D. Arnold
660.94
Jane D. Bowey
1,255.94, and increased the income of each petitioner for the year 1935 accordingly. Payments Received from Trusts On May 1, 1923, Douglas created two trusts referred to hereinafter as Trust No. 1 and Trust No. 3; the Eastern Trust Company of Halifax was the trustee of Trust No. 1, and the Montreal Trust Company was trustee of Trust No. 3. The stated purpose of each trust was: "To make suitable provisions through the Trustee for his four daughters, and to establish a fund to be held in trust for their benefit." The corpus of Trust No. 1 consisted of securities and cash valued at $59,500 and of Trust No. 3 similar assets valued at $55,000. Such corpora with the income thereon were referred to as "Trust Funds". The trusts provided that the trustee should pay out of the Trust Funds annuities to the petitioner beneficiaries ranging from $500 per year *301 for the period from 21 to 25 years of age, to $4,500 per year at the fiftieth birthday of each daughter. Provisions were made for payment in the event of the death of each annuitant and for division of the Fund when the youngest beneficiary should become 55 years of age. Annuities were not limited to the income received by the trust, but upon the exhaustion of such income the principal, or corpus, was subject to invasion for the purpose of paying the several annuities as specified in the trust agreements. The names of the four daughters of Douglas and the dates of their births were stated to be: Marion Isabel Douglas (Marion D. Eddy) November 4, 1904. Grace Belden Douglas (Grace D. Thatcher), August 15, 1906. Frances Eloise Douglas (Eloise D. Arnold), November 11, 1907. Marjorie Jane Douglas (Jane D. Bowey), November 15, 1910. The petitioners received payments from Trust No. 1 and Trust No. 3 during the years and in the amounts as follows: Trust
Trust
Petitioner
Year
No. 1
No. 3
Marion D. Eddy
1935
$2,500.00
$2,500.00
Marion D. Eddy
1937
2,500.00
2,418.64
Marion D. Eddy
1938
2,500.00
2,404.97
Grace D. Thatcher
1935
2,000.00
2,000.00
Grace D. Thatcher
1936
2,500.00
2,397.23
Eloise D. Arnold
1935
2,000.00
2,000.00
Eloise D. Arnold
1936
2,000.00
1,879.23
Eloise D. Arnold
1937
2,000.00
2,434.91
Eloise D. Arnold
1938
2,500.00
2,404.97
Jane D. Bowey
1935
2,000.00
2,000.00
Jane D. Bowey
1937
2,000.00
2,000.00
Jane D. Bowey
1938
2,000.00
1,923.97
*302 The petitioners Marion D. Eddy, Grace D. Thatcher, and Eloise D. Arnold did not include any portion of the foregoing payments in the income reported by them for the years in which the payments were received. The petitioner Jane D. Bowey, in her Federal income tax returns, reported payments received as follows: 1935, none; 1937, $2,000; 1938, $3,471.81. In his notices of deficiency the Commissioner increased the reported income of the petitioners for the years and in the above amounts, excepting as to Jane D. Bowey. As to her he increased reported income by the amounts of $4,000, $2,000 and $182.16 for the years 1935, 1937 and 1938. Claimed Loss on Chose in Action A chose in action amounting to $203,580 against one H. V. Smith was purchased by Douglas-Rogers, Ltd., on or about September 16, 1931, from Douglas and such sum was credited to the Loan Account. With the transfer of this chose in action to Douglas-Rogers, Ltd., 3,400 shares of Home Insurance Company, a corporation doing business in New York City, were transferred as collateral. The balance due on this chose in action against the said H. V. Smith to Douglas-Rogers, Ltd., on May 15, 1935, was $160,349.30. On that *303 date the petitioners purchased the chose in action against H. V. Smith, together with the collateral from Douglas-Rogers, Ltd., by paying to Douglas-Rogers, Ltd., the sum of $160,349.30 of which the petitioners paid one-quarter each. On October 2, 1935, this chose in action was liquidated by the application and payment by H. V. Smith of the 3,400 shares of Home Insurance Company, as payment in full for the chose in action. On that date the Home Insurance Company shares were worth $35.50 a share or a total of $120,700. By reason of this transaction the petitioners claim that a loss of $39,649.30 was sustained and that one-quarter of the said $93,649.30, or $9,912.32, constituted a deductible loss by each petitioner in 1935. The Commissioner has not allowed any portion of the claimed loss as a deduction. The petitioners did not sell or otherwise dispose of the 3,400 shares of Home Insurance Company stock during the year 1935 nor any other year involved in these proceedings. Opinion VAN FOSSAN, Judge: The first and second issues involve the taxability of the gain, if any, received by each petitioner from the liquidation of Douglas-Rogers, Ltd. The petitioners contend that all transactions *304 relating to the shares of Douglas-Rogers, Ltd., issued in the names of the petitioners were carried on by their father in Nova Scotia; that the administration of his estate and the liquidation of Douglas-Rogers Ltd. were effected in Nova Scotia; that the gifts from Douglas to his daughters were not inter vivos but were testamentary in character, and that hence the taxable gain is measured by the difference between the fair market value of the shares on December 17, 1934, the date of Douglas' death, and the amount realized upon liquidation. The respondent's position is that the gifts were made inter vivos. He relies on , which holds that the cost to the donor of the property is the basis of taxable gain chargeable to the donee upon its sale or other disposition. Despite some facts tending to an opposite conclusion, on the entire record, we are convinced that completed gifts, inter vivos, were made by Douglas in 1923. From this it would normally follow that the cost to the donor would be the proper basis for computing taxable gain on sale or other disposition by the donees. *305 The facts reveal, however, that after making the gifts Douglas dealt extensively in the stock and otherwise altered the number of shares standing in the names of his daughters. At one time there were no shares standing in the names of two of the daughters. Gain or loss on the transactions so made should have been reported in the appropriate years. Whether such was done we do not know but the cost basis of the shares would vary with each transaction. Petitioners pitched their entire case on the contention that the gifts did not take effect until the death of Douglas. They submitted no evidence to establish the basis resulting from the various transactions in the shares. Without such evidence we are unable to find the correct basis. The production of this evidence was part of the burden of proof which rested on the petitioners. In its absence the presumption of correctness attaching to the respondent's determination has not been overcome and we have no alternative to approving his determination as to the amount of gain realized. Respondent concedes that the amount originally determined by him should be reduced by $1,974.12 in respect of Eloise D. Arnold and Marion D. Eddy. On this *306 issue respondent's determination as so amended is approved. The third issue presents the taxability of interest credited on the "Marion I. Davis et al. Loan Account" from 1930 to 1935. The entire amount of such interest, $195,807, was actually paid to the petitioners upon the liquidation of Douglas-Rogers, Ltd. on May 15, 1935. Upon the facts of record we hold that from time to time Douglas made numerous gifts of large amounts to his daughters and deposited them with Douglas-Rogers, Ltd., whose books reflected such gifts in its Loan Account with the petitioners. There appears to be no doubt that such deposits were subject to withdrawal by the petitioners. The account itself shows that during the years 1933, 1934 and 1935 such withdrawals were made by them or for them. In September 1931 the open account was reduced to specific written obligations of Douglas-Rogers, Ltd., payable to the several petitioners. Thereafter the sources of all the credits appearing in the account are not clear, but the stipulated facts definitely imply that such notes became the basis of the interest accretions aggregating $195,807. The "adjustments" do not indicate that any gifts made by Douglas to his *307 daughters subsequent to September 1931 were credited to the account. Douglas-Rogers, Ltd. did not reflect on its books the execution of the notes nor the credits of interest directly to them. That irregularity is immaterial, however as is the variance between the provisions of the notes requiring the payment of monthly interest and the quarterly entries of such interest on the Douglas-Rogers, Ltd. books. The record reveals that interest payments made by Douglas-Rogerts, Ltd. were made regularly throughout the entire period in its accounts with the petitioners and were available to them when so made. As above observed, the account shows that considerable sums were actually withdrawn by the petitioners and debited to them in the account, which reflected the sum owed to them by the company, augmented by the interest payments. The company was a corporation ostensibly engaged in the investment business. Obviously, it also acted as a banker for the petitioners. The quarterly payments of interest were without doubt constructively received by the petitioners. Under such circumstances it is consonant with the facts to say that they were actually so received. The amounts of interest paid and *308 credited by Douglas-Rogers, Ltd. to the petitioners in years prior to 1935 having been so paid to and received by them, should have been included in their returns for those years in whatever jurisdiction they were required to be made. Such amounts are not taxable in 1935. The amounts of interest attributable to and paid in the year 1935, including the period from February 28, 1935 to May 15, 1935, are, however, subject to tax. The fourth issue challenges the taxability of payments received by the petitioners from certain trusts established by their father for their benefit. The trust instruments provided that fixed annuities should be paid out of income and upon its exhaustion out of corpus. During the years for which the respondent determined the petitioners were deficient in tax they received payments from the trusts but no proof was offered that any portion thereof was made from the corpora of the trusts. Such payments are presumed to have been made from income and hence they are taxable to the petitioners as income to them. The petitioners have not sustained their burden of proof. The fifth issue involves the deductibility of a loss claimed by the petitioners upon the liquidation *309 of a chose in action against H. V. Smith. On August 15, 1935, the petitioners purchased from Douglas-Rogers, Ltd., for $160,349.30 the chose in action which was collaterally secured by 3,400 shares of Home Insurance Company stock. On October 2, 1935, the chose in action was fully paid and liquidated by the application and payment of such shares by H. V. Smith. The shares were then worth $120,700. The collateral so received by the petitioners was not sold or disposed of by them in any of the years before us. Petitioners claim a loss of the difference between the purchase price and the value of the stock accepted in payment. The stipulated facts fail to disclose why the transaction was entered into, i.e., whether a compromise or not. See . Nor do the facts reveal the financial condition of H. V. Smith at the time of the transfer of the Home Insurance Company stock to the petitioners. . In the absence of proof as to solvency and other pertinent facts as to the transaction, we can not determine whether the petitioners suffered a loss, made a bad *310 bargain, or voluntarily forgave the amount of the loss claimed. If he was insolvent that fact should have been set forth. This issue is decided in favor of the respondent upon lack of proof. In the stipulation certain facts were set out with reference to the payment to the Province of Nova Scotia in 1936 and 1938 of Succession Duties on account of the passing of property on the death of petitioners' father, and on brief petitioners attempt to establish, as an alternative, the contention that such duties should be deducted from the amounts found to represent income on a liquidation of Douglas-Rogers, Ltd. in 1935 or because of the Loan Account. Since no such issue is raised by the pleadings, the facts so stipulated are mere surplusage. We can give no consideration to an issue not pleaded. Decisions will be entered under Rule 50.